IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| TIMOTHY STEARS, individually and on behalf of all other similarly situated persons, Plaintiffs, v. <br><br> DITMAR LOGISTICS LEASING, LLC <br> Defendant(s). | § § § § § § § § § Case No. 5:24-cv-593 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY DEMAND** |

Plaintiff Timothy Stears, individually and on behalf of all others similarly situated (collectively "Plaintiffs"), by his attorneys, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

**INTRODUCTION**

1. Plaintiff Stears brings claims under the federal Truth in Leasing Act ("TILA") 49 C.F.R. § 376.12(g) pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of similarly situated current and former drivers who signed an Owner Operator Agreement with Detmar Logistics Leasing, LLC ("Detmar" or "Defendant") at any time during the four years prior to the filing of the complaint through the date of final judgment. Plaintiff Stears alleges that Detmar violated the TILA by failing to provide Plaintiff Stears and the proposed Class Members (collectively "Plaintiffs" or "Owner Operators") with copies of rated freight bills or other documentation containing the same information for the loads Owner Operators hauled for Detmar, so they could verify the accuracy of their pay. Plaintiff Stears seeks to recover lost wages and other compensation caused by Detmar's violation of the TILA pursuant to 49 C.F.R. § 376.12(g).

2. Detmar is a privately owned company and leader in the proppant logistics and transportation industry.

1

3. Detmar specializes in procuring and transporting fracking sand to its customers.

4. To accomplish its business purpose, Detmar relies on hundreds of truck drivers to deliver loads of fracking sand to its customers.

5. Detmar's drivers include "company drivers," who Detmar classifies as employees and Owner Operators who Detmar classifies as independent contractors.

6. Detmar requires Owner Operators to enter into Owner Operator Agreements with Detmar, whereby Detmar leases equipment from the Owner Operator.

7. The Owner Operator Agreement provides that Detmar will pay Owner Operators a percentage of the final gross revenue Detmar receives for each load Owner Operators haul.

8. The Owner Operator Agreement further provides that Detmar will email Owner Operators rated load documentation at the time they receive their settlement statement, which is the equivalent of a paycheck.

9. As an authorized motor carrier registered with the Secretary of Transportation, Detmar must comply with the requirements of the TILA 49 C.F.R. § 376.11 to perform authorized transportation where it does not own the relevant equipment.

10. The TILA requires Detmar to have a "written lease granting the use of the equipment" that complies with "the requirements contained in § 376.12." 49 CFR § 376.11-12.

11. The TILA is intended to remedy disparities in bargaining positions between owner operators and motor carriers and prevent opportunities for skimming. To further its goal of protecting the economic welfare and stability of owner operators, the TILA promotes full disclosure between motor carriers and owner operators. In the spirit of disclosure, 49 C.F.R. § 376.12(g) requires that when an owner operator's revenue is based on a percentage of the load's

gross revenue, the motor carrier must provide a copy of the rated freight bill[1] or other form of documentation used for a load containing the same information.

12. Even though the Owner Operator Agreement provides that Detmar will give Owner Operators the rated load documentation, in reality, Detmar did not provide Owner Operators with that documentation, or any other documentation that allowed Owner Operators to verify that they were being paid the correct percentage of the final gross revenue.

13. Detmar violated the TILA by failing to give Owner Operators a copy of the rated freight bill or any other document containing the same information that would appear on a rated freight bill at or before the time of settlement as specified in the Owner Operator Agreement, which Detmar required Owner Operators to sign, and as required under 49 C.F.R. § 376.12(g).

14. As a result of Detmar's TILA violations, Owner Operators did not have the documents necessary to determine the validity of their computed pay and suffered actual damages in the form of lost compensation.

15. Plaintiffs bring their TILA claims pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States. Specifically, this action is brought under 49 C.F.R. § 376.12. Plaintiffs have a private right of action for damages, injunctive relief, and attorneys' fees and costs under 49 U.S.C. § 14704. Jurisdiction over Plaintiffs' claims for declaratory relief is conferred by 28 U.S.C. §§ 2201 and 2202. This Court has subject matter

---

[1] Plaintiffs use the terms "rated load documentation" and "rated freight bill" interchangeably as both refer to documentation showing the amounts Detmar billed the customer for the load.

jurisdiction under 28 U.S.C. § 1332 because this case involves diversity of citizenship among the parties.

17. The amount in controversy in this matter exceeds the sum or value of $5,000,000 exclusive of interest and costs.

18. Plaintiff and at least one member of the proposed class are citizens of a state different from that of at least one Defendant.

19. Citizenship of the members of the proposed class action class is dispersed across the United States.

20. Plaintiffs' claims involve matters of national and/or interstate interest.

21. Plaintiffs and Drivers were engaged in commerce in their work for Defendant.

22. Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391 because Defendant resides in this District for venue purposes and/or is subject to the Court's personal jurisdiction in that it has substantial contacts with and conducts business in this District. In addition, a substantial part of the events giving rise to the claims occurred in the Western District of Texas.

## PARTIES

23. Plaintiff Timothy Stears is a citizen and resident of New Mexico.

24. Plaintiff Stears worked for Detmar as an Owner Operator truck driver pursuant to an Owner Operator Agreement with Detmar from approximately October 2019 to May 2023.

25. Defendant Detmar is a limited liability company formed and existing under the laws of the State of Texas.

26. Defendant Detmar is a motor carrier registered with the U.S. Department of Transportation.

27. Defendant Detmar's headquarters are located at 503 Med Court, San Antonio, Texas 78258.

28. All actions and omissions described in this complaint were made by Defendant directly or through its supervisory employees and agents.

## CLASS ALLEGATIONS

29. Plaintiff brings his TILA claims pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of similarly situated persons identified as: "all current and former drivers who drove a truck for Detmar Logistics Leasing, LLC pursuant to an Owner Operator Agreement ("OOA") at any time during the four years prior to the filing of the complaint through the date of final judgment." This proposed class is referred to herein as the "TILA Class."

30. Excluded from the TILA Class are Defendant's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the relevant class period has had, a controlling interest in Defendant.

31. The persons in the TILA Class are so numerous that joinder of all members is impracticable. The precise number of such persons is not known to Plaintiff, however, the facts on which the calculation of that number can be based are presently within Defendant's sole control.

32. Plaintiff is informed and believes, and based on such information and belief, alleges that there are hundreds of members of the putative TILA Class.

33. There are questions of law and fact common to the TILA Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

   a. Whether Defendant failed to give TILA Class members a copy of the rated freight bill or other documentation used for a load containing the same information, at or before the time of settlement as specified in the OOA, which Defendant required TILA Class members to sign, and as required under 49 C.F.R. § 376.12(g);

    b.   Whether TILA Class members are entitled to declaratory judgment and injunctive relief as to any of the claims identified herein: and

    c.   The nature and extent of class-wide injury and the appropriate measure of damages.

34. Plaintiff Stears' claims are typical of the TILA Class members' claims he seeks to represent insofar as he alleges that Defendant had a policy and practice violating the TILA by failing to adhere to and perform the provisions of the OOA that are required by the TILA.

35. Plaintiff Stears will fairly and adequately represent and protect the interests of the TILA Class. He understands that, as a class representative, he assumes fiduciary responsibility to the TILA Class to represent its interests fairly and adequately. Plaintiff Stears recognizes that as class representative, he must represent and consider the interests of the TILA Class just as he would represent and consider his own interests. He understands that in decisions regarding the conduct of the litigation and its possible settlement, he must not favor his own interests over those of the TILA Class. He recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the interests of the TILA Class. Plaintiff Stears understands that to provide adequate representation, he must remain informed of developments in the litigation, cooperate with class counsel by providing information and any relevant documentary material in his possession, and testify, if required, in a deposition and at trial.

36. Plaintiff Stears has retained counsel competent and experienced in complex class action wage litigation.

37. Defendant has acted or refused to act on grounds generally applicable to the TILA Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the TILA Class as a whole under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

38. The class claims are also properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure. A class action is superior to other available methods for the fair and efficient adjudication of this case, particularly in the context of wage litigation like the present action, where individual members of the class may lack the financial resources to vigorously prosecute a lawsuit in federal court against Defendant with far greater resources. The members of the TILA Class have been damaged and are entitled to recovery as a result of Defendant's common and uniform policies, practices, and procedures. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

## FACTUAL ALLEGATIONS

39. Detmar hired Plaintiff Stears and Owner Operators to haul loads of fracking sand to Detmar's customers.

40. When he was hired, Detmar required Plaintiff Stears to sign an OOA, by which he leased his truck to Defendant. Detmar requires all Owner Operators to sign an OOA by which Owner Operators lease their trucks to Defendant.

41. The OOA provides that Detmar will pay Owner Operators a percentage of the final gross revenue Detmar receives for each load Owner Operators haul.

42. The OOA further provides that when Detmar compensates Owner Operators for the loads they haul, Detmar will email Owner Operators a settlement statement and rated load documentation.

43. Despite these provisions of the OOA, Detmar did not provide Plaintiff Stears, or other Owner Operators with any rated load documentation for the loads they hauled, before or at the time of settlement. Instead, if Plaintiff Stears wanted to know how much a load would pay prior to

accepting it, he had to call Detmar to ask their dispatchers how much the load would pay. The Detmar dispatchers then verbally informed Plaintiff Stears what the load's gross revenue would be but did not provide him with any documentation reflecting the actual gross revenue for the load, at the time of the conversation, or afterwards.

44. As a matter of practice, Detmar does not provide Owner Operators with any rated load documentation when Owner Operators accept loads to haul, and only conveys the load's gross revenue amount over the phone, like it did with Plaintiff Stears.

45. At the time of settlement, Detmar does not send Owner Operators rated load documentation, despite the OOA provision requiring Detmar to do so.

46. Upon information and belief, Detmar underpaid Owner Operators by paying them less than the percentage of load's final gross revenue specified in the OOA, but because Detmar failed to provide Owner Operators with a rated freight bill or the rated load documentation, or equivalent documentation reflecting the amount Detmar billed its customers for loads, Owner Operators could not verify that they were being paid properly pursuant to the OOA.

47. On multiple occasions, Plaintiff Stears spoke with his dispatcher, Alexandria, before deciding to accept a load. Alexandria told Plaintiff Stears the load's gross revenue before he accepted the load; however, when Detmar sent Plaintiff Stears his settlement statement for the load, the gross revenue listed for the load was less than the amount Alexandria previously told him.

48. Plaintiff Stears was unable to verify that his pay was correct pursuant to the terms of the OOA, or dispute any underpayments, because he did not have a rated load documentation or any other documentation from Detmar containing the load's gross revenue.

49. When Owner Operators try to dispute their pay, Detmar refuses to provide documents to Owner Operators reflecting the actual gross revenue Detmar received for the load.

50. Two Owner Operators informed Plaintiff Stears that Detmar's President and CEO, Matt Detmar, admitted on a conference call that prior to calculating Owner Operators' pay for loads they hauled, Detmar skims money from the gross revenue of loads.

51. Because of Detmar's failure to provide Owner Operators with the freight bill or other documentation showing the rates Detmar charged its customers for the loads, Owner Operators were unable to ensure they were being properly paid, or to detect or dispute the disparity between what Detmar agreed to pay them and what Detmar actually paid them, which caused Owner Operators to suffer financial injury.

52. Detmar violated the TILA by failing to adhere to the required lease provisions regarding Owner Operators' compensation and provision of the rated freight bill or other form of freight documentation, which caused Owner Operators financial injury.

## CAUSE OF ACTION

### (VIOLATIONS OF THE TRUTH IN LEASING ACT)

53. Plaintiff individually and on behalf of the TILA Class re-alleges and incorporates by reference all allegations in all preceding paragraphs.

54. Defendant violated the Truth in Leasing Act, 49 C.F.R. § 376.12, by failing to give Owner Operators a copy of the rated freight bill at or before the time of settlement as specified in the OOA, which Defendant required Owner Operators to sign, and as required under 49 C.F.R. § 376.12(g).

55. As a result of this violation, Plaintiff and members of the TILA Class have lost wages and other compensation due them and are entitled to relief, including recovery of attorneys' fees, costs, and expenses of this action, as provided by 49 U.S.C. § 14704.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court enter the following relief:

A. Certifying this action as a class action under Fed. R. Civ. P. 23;

B. Designating Plaintiff as the Class Representative;

C. Designating the undersigned counsel as Class Counsel;

D. Entering a declaratory judgment that the practices complained of herein are unlawful;

E. Fashioning appropriate equitable and injunctive relief pursuant to 49 U.S.C. § 14707(a)(1) to remedy Defendant's violations of law, including but not limited to an order determining that Defendant's practices in failing to adhere to the OOA provisions required by the TILA violate the TILA;

F. Awarding compensatory damages pursuant to 49 U.S.C. § 14707(a)(2).

G. Awarding Pre-judgment and Post-judgment interest as otherwise provided by law;

H. Awarding Plaintiffs reasonable attorneys' fees and costs, including expert fees; and

I. Granting such other legal, injunctive and equitable relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: May 31, 2024

Respectfully submitted,

**KAPLAN LAW FIRM, PLLC**

*/s/ Austin Kaplan*
Austin Kaplan
Texas Bar No. 24072176
akaplan@kaplanlawatx.com
Caitlin Boehne
Texas Bar No. 24075815
cboehne@kaplanlawatx.com
Andrew Eckhous
Texas Bar No. 24127926
aeckhous@kaplanlawatx.com
J. Bryan Wood (*Pro Hac Vice application to be filed*)
bwood@kaplanlawatx.com
KAPLAN LAW FIRM, PLLC
2901 Bee Cave Road, Ste. G
Austin, TX 78746
Tel: 512-553-9390
Fax: 512-692-2788


GETMAN, SWEENEY & DUNN, PLLC
Rebecca King (*Pro Hac Vice application to be filed*)
Anamaria Segura (*Pro Hac Vice application to be filed*)
Whitney Flanagan (*Pro Hac Vice application to be filed*)
260 Fair Street
Kingston, NY 12401
Tel: (845) 255-9370
rking@getmansweeney.commailto:asegura@getmansweeney.com
wflanagan@getmansweeney.com